## In re ILLINOIS REFRIGERATOR CO.

### NATIONAL LOCK CO. v. BIRCH.
#### No. 5192.

Circuit Court of Appeals, Seventh Circuit. Nov. 27, 1934.

Roy F. Hall, of Rockford, Ill., for appellant.

J. J. Ludens, of Sterling, Ill., for appellee.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

SPARKS, Circuit Judge.

This appeal arises out of the disallowance of part of a claim filed by appellant against the bankrupt estate of the Illinois Refrigerator Company. The claim aggregated $18,437.14, and the allowance was for $10,017.67. The alleged error is based upon the disallowance of the remainder of the claim amounting to $8,419.47.

The claim arises out of three blanket orders for hardware sent to appellant by the bankrupt during the months of August and October, 1929. The items were ordered by catalog number at a stated price per item, and the approximate number of items needed by bankrupt for a stated period of time was set forth in the order. Appellant accepted the orders, bought the necessary raw materials, and proceeded to make up the specified hardware.

In June, 1930, appellant advised bankrupt that a large quantity of the orders had been completed and was ready for shipment. In March, 1931, officers of both companies had a meeting looking to the settlement of the debt which at that time was a little less than $19,000, and which represented articles of hardware manufactured by appellant and held by it subject to bankrupt's order for delivery. Appellant threatened suit immediately if not paid. The bankrupt replied that no payment was due because of non-delivery. It questioned the completion of the merchandise and stated to appellant that the latter could file suit for the entire amount if it so desired, but that the bankrupt was not going to pay the full amount unless the court determined that amount was due. At the time the blanket orders were given wooden boxes were in use in the manufacture of bankrupt's product, but since that time the demand of the trade had changed to steel boxes. For that reason certain of the hardware ordered was not well adapted to bankrupt's needs at that time. That matter was discussed and appellant then agreed that if the account could be put in the form of a definite settlement, it would make deductions in the total amount due, provided the terms of the compromise were adhered to. Several days were consumed in negotiating the settlement, and on April 10, 1931, appellant wrote a letter to

the bankrupt in which, among other things, it stated: "If you will make settlement for the $8,911.80 above referred to in the following manner (eight notes in equal amounts dated April 15, 1931, and due one each month from May 15, to December 15, 1931, inclusive of both dates, each note to bear interest at the rate of six per cent from April 15, 1931) we will accept the settlement in full of all demands in connection with merchandise referred to in our letter of October 20, 1930, but not including the merchandise shipped you during March totalling $1,474.92, and on April 3rd and 6th, totalling $357.50."

This proposition was accepted and the notes were executed. The letter of October 20, 1930, referred to the arrangement for the disposition of the hardware ordered by bankrupt which was then in appellant's warehouse. By its terms bankrupt was to release certain items, the orders were cancelled as to some items, and prices were reduced as to other items. Appellant's witnesses testified that at the conference which resulted in the compromise it was agreed that the matter must be closed up during the year 1931, and that whatever payments were agreed upon must be made as promised during that period. The first five notes were paid at maturity. The one due on October 15, was not paid until December 12, 1931, and the two remaining notes were never paid. After maturity the amount of the unpaid notes was included with other indebtedness in new notes maturing in January and February 1932, but they were never paid.

In March, 1932, bankrupt attempted to settle with all of its creditors on the basis of thirty cents on the dollar. Appellant agreed to accept that offer providing bankrupt would restore its claim to the amount actually due prior to the compromise agreement of April 15, 1931. Bankrupt signified its acceptance of this proposition by letter dated March 14, 1932, in which it enclosed a check to appellant for thirty per cent of the original claim. The letter stated: "We tender check of our financial backers on the basis of 30 cts on the dollar of the amount of your account with us. We ask that if there is no dispute in the face of the account to accept and cash this check promptly. The acceptance of the check constitutes an assignment in favor of the Trustee for said backers. It has been impossible to get unanimous acceptance of our offer. Independent investigation by a majority of the larger creditors has assured us of acceptance by approximately ninety per cent both in number and amount. Our backers ask this assignment as a protection against involuntary bankruptcy and will be used only for that purpose." Instead of cashing the check appellant sent it to bankrupt's attorney with directions to handle it according to the agreement. The thirty per cent settlement was never made, the check was never cashed, and appellant received no money on account of the transaction. However, appellant then delivered to bankrupt all of the unpaid notes. Subsequently certain creditors, not including appellant, filed an involuntary petition in bankruptcy against the debtor.

It is contended by appellant that the compromise agreement of April, 1931, was conditioned upon prompt payment of the notes as they became due, and that the failure to meet the last two notes gave appellant the right to insist upon payment of its account as it existed prior to the compromise settlement. The court found otherwise and we think the finding of fact is supported by evidence which is quite substantial. Appellant's letter of April 10, 1931, which purports to state the entire agreement contains no precedent condition that the notes shall be paid when due. Bankrupt was only required to execute its written promises to pay at certain dates. This it did, and they were accepted by appellant. The note due on October 15 was not paid until almost two months after that date, and the last two notes were renewed at maturity, and yet there was no indication on appellant's part that there had been a violation of any condition precedent, nor was there any manifestation by appellant of a desire to enforce the original debt except when a settlement with general creditors was imminent. Such a desire was first expressed when bankrupt proposed to settle with all its creditors at thirty cents on the dollar, and it was later expressed after the involuntary petition in bankruptcy was filed. It is also worthy of notice, as bearing on appellant's interpretation of the compromise agreement, that when the proposition was made to settle for thirty cents on the dollar, appellant agreed to it, providing bankrupt would restore appellant's original claim. If appellant's present contention is correct, it was not necessary for bankrupt to restore the former status of the claim, for already it would have been restored by a failure to pay the notes when due.

Again, if appellant had intended to preserve its rights under the original orders until the notes were paid, it would seem that it would have kept itself in readiness to deliver the entire merchandise covered by the orders. The record does not disclose that this was done, but on the contrary, the letter of October 20, 1930, discloses that large parts of the

orders were cancelled and that that merchandise was placed in appellant's regular stock, and the manufacture of that particular merchandise had been discontinued.

We think the compromise agreement of April, 1931, amounted to an accord and satisfaction of the original claim, and that bankrupt fully complied with its requirements. It is true with respect to liquidated and undisputed demands that an acceptance by a creditor from a debtor of a less sum than the amount due, in full satisfaction of the debt, is a discharge only of so much of the debt as is equal in amount to the sum received. Farmers' & Mechanics' Life Association v. Caine, 224 Ill. 599, 79 N. E. 956. But it is likewise true, as stated in that case, that where there has been a compromise, in good faith, of unliquidated or disputed demands, where there is an honest difference between the parties as to the amount, such an accord with satisfaction is binding. This last sentence, we think, accurately describes the transaction before us.

It is conceded that where an accord is relied upon, it must be executed. We are convinced that the record discloses a full performance on the part of bankrupt. The authorities relied upon by appellant relate to instances where the status of the original debt was expressly retained until the money was actually paid under the new contract. That state of facts does not exist in the instant case.

The order of the District Court is affirmed.